IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

Silas Padilla,

    Plaintiff(s),

v.

Elizabeth School District C-1

    Defendant(s).

---

## COMPLAINT WITH JURY DEMAND

---

Plaintiff, Silas Padilla ("Plaintiff" or "Silas"), hereby respectfully files this action against Elizabeth School District C-1 (the "District" or "Defendant"), by and through counsel Kishinevsky & Raykin, Attorneys at Law, and states on information and belief as follows. This action seeks equitable relief and appropriate damages and costs.

### I.   JURISDICTION AND VENUE

1. The Court has jurisdiction over this claim pursuant to 28 U.S.C. §§ 1331, 1343, and 1367. Plaintiff is a resident of Elbert County, Colorado.

2. Defendant Elizabeth School District C-1 has its principal place of business in Elbert County, Colorado.

3. Venue is proper pursuant to 28 U.S.C. § 1391(b) as the wrongful acts alleged by the Plaintiff occurred in whole or in part in Colorado.

### II.   PARTIES

4. At all times relevant to this litigation, Plaintiff was a minor student enrolled in the Defendant District.

5. Plaintiff is a disabled individual within the meaning of Section 504 of the United States Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794; Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12131 *et seq.*; and the Colorado Anti-Discrimination Act ("CADA"), C.R.S. § 24-24-801 *et seq.*

6. Plaintiff suffers from multiple disabilities including, intellectual, orthopedic, speech and language, and partial deafness. Plaintiff's disabilities impair major life activities including walking, standing, thinking, communicating, and working.

7. Defendant, Elizabeth School District (the "District" or "Defendant") is a recipient of federal financial assistance subject to the requirements of Section 504, 34 C.F.R. § 104.11, and a public governmental entity subject to the provisions of the ADA, 42 U.S.C. §§ 12132, 12131, (1)(A), (B).

**FACTUAL BACKGROUND**

8. Silas Padilla is a young man with multiple severe disabilities. His disabilities include intellectual, physical, orthopedic, and speech and language impairments that impair all major life activities, including walking, communicating, thinking, and working.

9. Silas is a special education student at Elizabeth High School ("School") and received educational services and supports through his enrollment in the Defendant District.

10. Silas cannot walk or stand independently. Because of these impairments, Silas requires a powered wheelchair to move through his environment.

11. Because of the extent of Silas's disabilities, he must be supervised at all times for his safety.

12. Since at least September 2021, the Defendant has recognized Silas's need for constant, one-to-one, supervision, and provided him with a paraprofessional as a reasonable accommodation.

13. However, the Defendant has operated a policy or practice of denying Silas's reasonable accommodations by failing to provide one-to-one supervision constantly and consistently throughout the school day.

14. The Defendant's failure to provide Silas with constant one-to-one supervision denied him access to Defendant's programs and the benefits therefrom. The Defendant's failure also caused Silas to suffer grievous injury on October 19, 2022, when he was left unsupervised by the District.

15. On October 19, 2022 at approximately midday, Silas finished lunch, and he and his paraprofessional, Monty Bernard, began to transition from the lunchroom to an adjacent outdoor patio.

16. When the pair reached the School's exterior door, Mr. Bernard halted while Silas continued moving. Mr. Bernard stopped to hold the door open for other students walking to the patio. Mr. Bernard's actions left Silas unattended as he continued to move outside.

17. While Mr. Bernard remained by the door, Silas lost control of his wheelchair.

18. Silas's wheelchair continued forward, gaining speed, and crashed into a bench connected with an outdoor picnic table.

19. Silas's legs absorbed the impact, and he suffered a fracture to his left tibia.

20. Silas immediately screamed in pain and another teacher arrived to move him away from the bench.

21. Mr. Bernard brought Silas back inside, where the school nurse, Brooke Newton, evaluated him.

22. Silas's injury occurred at approximately 11:50 am. At approximately 12:07 pm, Ms. Newton contacted Silas's mother, Sabrina Padilla ("Ms. Padilla"), via text message.

23. Ms. Newton informed Ms. Padilla that "Silas ran into a bench with his chair, and his left leg in the shin area has a scratch and a bruise on it."

24. Ms. Newton also asked Ms. Padilla for permission to administer a liquid painkiller.

25. Ms. Newton's messages are provided below:



26. Ms. Newton's messages did not communicate any urgency, nor that Silas had suffered a severe injury. However, an incident report completed by Mr. Bernard identified Silas's broken leg.[1]

27. A contemporaneous injury report, left unsigned, noted that the when the "Para stopped to let students in cafeteria door [*sic*], Silas kept going and ran into a bench that was attached to the outside table."

28. The report identified Mr. Bernard as a witness and provided actionable steps to prevent future injury including "won't do patio walks, or walks where there are multiple immovable objects, [*sic*] monitor wheelchair speed."

29. To be clear, Ms. Padilla did not receive these reports the day of Silas's injury. Rather, she received them approximately a week later, after specifically requesting further information from the School, which failed to convey the serious of Silas's injury until after Ms. Padilla took him to the emergency room.

30. The School's communication to Ms. Padilla did not inform her of the severity of Silas's injury, nor the School's failure to supervise. Thus, Ms. Padilla did not understand that Silas's was severely injured due to the School's failures.

31. The School also failed to communicate Silas's status at any other point throughout the day. As a result, Silas was left to endure the pain of a broken leg throughout the day, with nothing other than ice and Tylenol to ease his pain.

32. Ms. Padilla trusted that the School would inform her of any serious injuries. However, it failed to do so, despite heavy swelling that prevented Silas from properly adjusting in or exiting his wheelchair.

---

[1] Mr. Bernard's report incorrectly identifies the date of injury as October 18. Silas's injury actually occurred on October 19, 2022.

33. Ms. Padilla did not understand the severity of Silas's injury until approximately 4:00 pm, when she arrived to pick him up from the bus.

34. Upon taking him home, Ms. Padilla immediately observed the severe swelling on his left leg. Silas was also clearly in severe pain.

35. Ms. Padilla immediately took Silas to a nearby emergency room, where he was diagnosed with a fractured tibia. Because of Ms. Padilla's quick actions, Silas narrowly avoided surgical intervention.

36. Initially, no School or District representatives reached out to confer with Ms. Padilla about Silas's injury.

37. Instead, Ms. Padilla was forced to contact the School and District and demand an explanation.

38. Several days later, approximately October 21, 2022, Ms. Padilla went personally to the School to learn what happened to Silas. Had Ms. Padilla been informed of the nature and extent of his injury timely, she would have taken him immediately to the emergency room, saving him hours of severe pain.

39. Other than this information, which Ms. Padilla was forced to seek personally, neither the School nor District contacted her about Silas's injury.

40. Ms. Padilla explained her frustration over the lack of communication to Ms. Newton. Approximately a week later, on October 27, 2022, Kimberley Runyan, Assistant Principal, provided Ms. Padilla with the incident reports previously referenced.

41. As discussed, the incident reports documented Silas's injury and its cause much more clearly than the text messages sent to Ms. Padilla by the School nurse.

42. Following his injury, Silas spent several weeks bedridden in severe pain.

43. Throughout this time, his mobility and socialization were severely limited as he was placed in a full-leg cast.

44. As a non-ambulatory and 185 lbs. individual, it was extremely difficult for Ms. Padilla to care for Silas during this period.

45. Silas also missed special education and therapy services during this time.

46. In the days and weeks following the injury, Ms. Padilla communicated repeatedly with School and District staff.

47. In November, Ms. Padilla requested a meeting with the School to discuss Silas's safety and one-to-one supervision.

48. Kimberley Runyan, Assistant Principal, accepted responsibility and apologized to Ms. Padilla.

49. Silas remained in hospital or homecare until January 2023. He remained in his cast and immobile until December 8, 2022, and received homecare from then to December 15, 2022, the start of winter break.

50. Fortunately, Ms. Padilla's quick actions saved Silas from requiring surgery and Silas recovered from his injury. However, his left leg continues to look different following the injury and his is bothered by continuing aches and pains.

51. Silas's injury was entirely preventable through proper supervision. His hours of agony after suffering the injury were also preventable through reasonable communication with Ms. Padilla. The School and District failed in both regards.

52. The District's failure to conduct any investigation or to even contact Ms. Padilla until weeks afterward further shows that the District was deliberately indifferent to Silas's health, wellbeing, and federally protected rights.

53. Based on the District's own accounting, Silas spent a minimum of *four hours* in extreme and severe pain. Throughout this time, the District failed to take any action other than a brief, and misleading, text and providing Silas Tylenol.

54. Because of the District's failures to properly inform Ms. Padilla of Silas's injury, he did not receive emergency treatment until that evening, narrowly avoiding permanent disfigurement and surgery.

55. Despite documenting the severity of Silas's injury, the District failed to communicate with Ms. Padilla the day of the injury, the day after, the remainder of that week, and for several weeks thereafter.

56. Instead, Ms. Padilla was forced to personally travel to the School to obtain any information.

57. Silas's swelling and pain were clearly evident when Ms. Padilla took him home at 4:00 pm. Accordingly, the District failed to take action despite a clearly severe injury to a disabled child for several hours.

58. Throughout this time, the District was in sole possession of information about the cause of and severity of Silas's injury. The District's failure to act was unconscionable.

59. When Silas finally received treatment, he was forced to spend weeks immobilized in a cast. Even upon removing the cast, he still required significant home care for several months.

60. The Defendant's failures, as described above, were deliberately indifferent to Silas's federally protected rights during and after his injury.

### III.   LEGAL CLAIMS

### COUNT I

### DEFENDANT VIOLATED SECTION 504 OF THE REHABILITATION ACT, 29 U.S.C. § 794

61. Plaintiff incorporates, by reference, all previous paragraphs of the Complaint herein.

62. Pursuant to Section 504 of the Rehabilitation Act of 1973 ("Section 504") and its regulation "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . ." 29 U.S.C. § 794

63. The Defendant, Elizabeth School District, is a recipient of federal financial assistance and operate a public elementary or secondary education program or activity. Therefore, it is a covered entity under 29 U.S.C. § 794.

64. The Plaintiff is a person with a disability within the meaning of 29 U.S.C. § 794.

65. The Defendant intentionally discriminated against the Plaintiff by failing to provide reasonable accommodations, in violation of 29 U.S.C. § 794 and its implementing regulations.

66. The Defendant intentionally discriminated against the Plaintiff by excluding him from participation in and denying him the benefits of Defendant's programs or activities solely because of his disability in violation of 29 U.S.C. § 794 and its implementing regulations.

67. Defendants have otherwise intentionally discriminated against the Plaintiff in violation of Section 504.

68. As a direct and proximate cause of Defendants' violation of Section 504, the Plaintiff has suffered and continues to suffer severe and grievous physical, mental, and emotional suffering, humiliation, stigma, and other injuries he will continue to suffer.

## COUNT II

**DEFENDANTS VIOLATED TITLE II OF THE AMERICANS WITH DISABILITIES ACT, 42 U.S.C. §§ 12131 *et seq.***

69. Plaintiff incorporates by reference all previous paragraphs of the Complaint herein.

70. Title II of the ADA and its regulations provide that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or actives of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132 (*see also* 28 C.F.R. Part 35).

71. Defendants are each a public entity subject to Title II of the ADA, 42 U.S.C. § 12132.

72. Plaintiff is a person with a disability within the meaning of 42 U.S.C. § 12102.

73. Defendants intentionally violated Plaintiff's rights under the ADA and its regulations by excluding him from participation in and denying him the benefits of Defendants' services, programs, and activities, on the basis of disability, and by subjecting him to discrimination in violation of 42 U.S.C. § 12132.

## COUNT III

### DEFENDANTS VIOLATED THE COLORADO ANTI-DISCRIMINATION ACT, C.R.S. § 24-34-801 *et seq.*

74. Plaintiff incorporates by reference all previous paragraphs of the Complaint herein.

75. The Colorado Anti-Discrimination Act ("CADA") affirms that it is the policy of the State of Colorado "[t]o encourage and enable…individuals with a disability to participate fully in social, employment, and educational opportunities… on the same terms and conditions as individuals without a disability" and "[t]hat…individuals with a disability must not be excluded, by reason of his or her disability, from participation in or be denied the benefits of the services, programs, or activities of any public entity or be subject to discrimination by any public entity." C.R.S. §24-34-801 (1)(a),(d). These rights are codified as a Civil Right in the Colorado Revised Statutes.

76. The Defendant is a public entity subject to C.R.S. §24-34-801 *et seq.* per C.R.S. §24-34-301(5.4)(b).

77. The Plaintiff is an individual with a disability under C.R.S. §24-34-301(2.5).

78. Defendants discriminated against Plaintiff in the full utilization of or benefit from the services provide and rendered by Defendants due to the Plaintiff's disability.

79. Defendants otherwise violated Plaintiff's rights under the CADA.

## IV.   PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests the following relief:

A. Find that the Defendant violated state and federal law;

B. Find the Plaintiff is the prevailing party;

C. Award the Plaintiff equitable relief;

D. Award the Plaintiff compensatory damages;

E. Award the Plaintiff his reasonable attorneys' fees and costs under 42 U.S.C. § 1988 and/or other applicable statutes; and

F. Any other relief deemed necessary or appropriate.


*/s/ Conor O'Donnell*
Conor O'Donnell
Igor Raykin
Kishinevsky & Raykin, Attorneys at Law
2851 S. Parker Rd., Suite 150
Aurora, CO 80014
Phone: 720-748-8888
igor@coloradolawteam.com
conor@coloradolawteam.com
**Attorneys for Plaintiff**